## Lassiter v. Commonwealth.

Nov. 17, 1939.

Joe Lancaster for appellant.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF— Affirming.

The appellant, Ralph Lassiter, was indicted by the grand jury of Calloway county for knowingly receiving stolen property. The indictment charged, in substance, that appellant unlawfully, willfully and feloniously received from O. B. Farley and William Bucy eleven typewriters of the value of more than $50, the personal property of the Murray High School, which property had lately theretofore been unlawfully and feloniously taken, stolen and carried away by Farley and Bucy from the said school with fradulent intent, etc., and that appellant received said typewriters from Farley and Bucy knowing that same had been stolen by Farley and Bucy from the said school, etc.

Upon a trial of the case appellant was convicted and sentenced to one year in the state penitentiary. He appeals.

No demurrer was filed to the indictment nor is there any complaint made as to its sufficiency. The only grounds relied on for reversal are, that the court erred in the admission of certain evidence and that the evidence is insufficient to sustain a conviction and that the court should have directed the jury to find the defendant not guilty.

The only alleged incompetent evidence pointed out in brief of appellant relates to a signed, written confession made by appellant to Wells Overbey, county attorney of Calloway county.

It is insisted that this confession was extorted from appellant in violation of Section 1649b-1, Kentucky Statutes, commonly known as the Anti-sweating Act.

Appellant testified that he was first arrested on a "cold check" charge and that the county attorney sent him word to come to his office; that he went to the county

attorney's office and was taken from there into the sheriff's office and the county attorney asked him what he knew about the typewriters having been stolen and he told him he knew nothing about it. According to his evidence, the county attorney argued with him and insisted that he did know something about it and told him he was going to lock him up and keep him until he told about it. He further said that Mr. Overbey told him that he was going to turn the matter over to the State Police and that it might be better if he would tell him something, and further said to him "I don't give a damn about this 'cold check' business, I will drop that, I want to get these other fellows that are in this, as far as you are concerned, I don't care anything about you." He said that he finally signed the written confession, but that he did not know what was in it.

Hugh Lassiter, a brother of appellant, testified, in substance, that he was present at the time appellant was questioned by the county attorney, and he asked the county attorney what appellant was charged with, and he, the county attorney, said, "some 'cold checks,'" but he "was going to try to get him hooked up with another matter that he thought he was in," and asked appellant to tell him what he knew about it, saying, "I will turn you loose if you tell me who was in it," but appellant still denied knowing anything about the stealing of the typewriters. He said that appellant signed the written confession, but it was not read to him before he signed it. He said he was present when the statement was dictated to a stenographer and the county attorney would ask the appellant a question and then answer it himself and ask appellant if that was right and he had to say yes and no. He further said that the county attorney told appellant that if he would tell certain things he would turn him loose and do nothing with him. Fred Lassiter, another brother of appellant, testified that he was present on the occasion, referred to above, and his evidence is, in substance, about the same as that of Hugh Lassiter.

Mr. Overbey, the county attorney, testified that he talked to appellant after he was arrested and that appellant talked to him; that the first time he talked to appellant he denied having anything to do with the stealing of the typewriters or receiving them. Later, on another occasion in the presence of Hugh Lassiter, the latter told his brother that he would like for him to tell

all the truth. He said he made appellant no offer of any immunity and that appellant voluntarily told him that he received the typewriters from Bucy and others who stole them from the Murray High School and transported them in his car, and that his statements were made in the presence of the county judge, J. W. Clopton, and Miss Morrell Hartsfield, the stenographer, who took down appellant's statement in shorthand, and after it was transcribed by Miss Hartsfield, he, Overbey, read it to appellant and he signed and swore to it. The witness, Overbey, contradicted the statements of appellant and his brothers, and according to his evidence, there were no improper methods used in obtaining the statement from appellant. The county judge, Clopton, and the stenographer, Miss Hartsfield, both testified for the commonwealth and their evidence corroborates Overbey, in that the statements of appellant were voluntarily given without any promise of immunity, threats, or other methods or acts, tending to violate the Anti-sweating Statute.

It is thus seen that we have a direct conflict of evidence. If the evidence of appellant and his two brothers is to be believed, appellant's confession was extorted from him in flagrant violation of the statute. On the other hand, if the evidence of the county attorney, county judge and Miss Hartsfield is to be believed, there were no improper methods resorted to in obtaining the confession or statement of appellant and the statute was not invaded.

The issue or question as to whether or not appellant's confession was extorted from him in violation of the statute was submitted to the jury by Instruction No. 2, which reads as follows:

"If the jury believe from the evidence in this case that the statements, affidavits or confessions, admitted in evidence as made by the defendant to the county attorney of Calloway county, were extorted from the defendant by the use of force, duress, threats, or promises of immunity, or by plying the defendant with questions after he was under arrest, and were not freely and voluntarily given by the defendant, then the jury should disregard said statements, or confessions, and should not consider same in reaching their verdict, because in that event they would not be competent evidence against the defendant."

The jury being the judge of the weight of the evidence and the credibility of the witnesses and having been properly instructed upon the conflicting issues, it had the right to believe the witnesses for the commonwealth and, having found defendant guilty, we are not authorized to disturb the verdict. Very clearly the evidence is amply sufficient to sustain the verdict and judgment of the court.

It is next insisted that the evidence is insufficient to sustain the allegations of the indictment charging defendant with knowingly receiving stolen property. The argument is, that if any offense was committed by appellant, it was a conspiracy to steal the typewriters rather than receiving them after they had been stolen by Bucy and others.

In the written statement or confession signed by appellant he stated, among other things, in substance, that Farley and Bucy came to him on the night the typewriters were stolen and asked him if he would "haul some stuff" for them and he asked them what it was and they said it was typewriters. They discussed the price for his services and finally agreed on the price of $25 and they told him to meet them at the High School on Main Street at 1 o'clock; he drove up there and Farley and another man who had a mask on brought the typewriters out of the school building and he helped put them in the car and transported them to a point on the Concord Road. According to appellant's own evidence, he had nothing to do with stealing the typewriters from the school building, but after Bucy and his companions had taken them from the school building, he, appellant, received and transported them in his car. It may be true that appellant had knowledge that Bucy and his companions were going to steal the typewriters, but appellant's part in the theft was only to receive and transport the property, which he did. Even though appellant might have been indicted and convicted as a principal, yet, in the circumstances and under his own evidence, he was also guilty of knowingly receiving and transporting stolen property after it had been stolen by others. We do not think there was any departure in the evidence from the allegations in the indictment.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.